UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ANDRE WILBERT,

           Plaintiff,

v.

JAMES SCHIEBNER et al.,

           Defendants.

_____/

Case No. 1:25-cv-887

Honorable Robert J. Jonker

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kludy and Doe. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants Schiebner, Mitteer, Hamilton, Maus, and Lewis: official capacity claims, First Amendment access to the courts claims, Fourth Amendment claims, and Eighth Amendment claims. Plaintiff's claims of First Amendment retaliation against Defendants Schiebner, Mitteer, Hamilton, Maus, and Lewis remain in the case.

**Discussion**

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues the following MCF staff: Warden James Schiebner, Inspector Unknown Kludy, Nurse Laura Mitteer, Nurse Tamerla Hamilton, Nurse Unknown Party ("Jane Doe"), Correctional Officer Unknown Maus, and Correctional Officer Unknown Lewis.

Plaintiff's complaint concerns events spanning from August 8, 2022, to August 19, 2022. (Compl., ECF No. 1.) On August 8, 2022, Defendant Mitteer told Plaintiff that he needed to be isolated in segregation as a "close contact" to someone diagnosed with COVID-19. (*Id.*, PageID.7.) Following his move to segregation, Plaintiff informed Defendants Mitteer and Hamilton that he needed his CPAP machine, a second pillow, and his "prostate and essential pain medication" from his cell. (*Id.*, PageID.7–11.) He also informed Defendant Maus that he needed a second pillow. (*Id.*, PageID.9.) When Defendants Mitteer, Hamilton, and Maus failed to comply with Plaintiff's requests, Plaintiff told each Defendant that he planned to file a grievance. (*Id.*, PageID.7, 9–11.) Defendant Mitteer responded, "Since you want to file a grievance, I am not going to get anything," (*id.*, PageID.7); Defendant Hamilton stated, "As long as you are filing grievances on health care staff, you will not get anything" (*id.*, PageID.9); and Defendant Maus explained that Plaintiff's needs would not be accommodated "for filing grievances" (*id.*, PageID.9–10). Defendants Mitteer, Hamilton, and Maus did not provide Plaintiff with the requested items.

From August 8, 2022, through August 19, 2022, Plaintiff was placed in segregation in an observation cell equipped with 24-hour camera surveillance. (*Id.*, PageID.7.) Plaintiff sent to kite

2

to Defendant Schiebner addressing the "camera issue" and verbally complained to Defendant Schiebner that Plaintiff "maintained some reasonable expectations of privacy" while Defendant Schiebner was making his rounds. (*Id.*, PageID.7–8.) Defendant Schieber laughed, telling Plaintiff, "Writing grievances will only make it continue." (*Id.*, PageID.8.)

On August 11, 2022, Defendant Doe required Plaintiff to take a COVID-19 test from her after she had previously tested other patients without gloves. (*Id.*, PageID.11.) When Plaintiff complained, Defendant Doe told Plaintiff, "If you do not take the test, you will not be anywhere." (*Id.*, PageID.18.) Plaintiff told Defendant Kludy that he needed a new test, but Defendant Kludy did not obtain one for Plaintiff. (*Id.*)

Plaintiff alleges that, on July 12, 2022, following Plaintiff's appeal, Plaintiff was unfavorably resentenced. (*Id.*, PageID.6.) He claims that he was required to request appellate counsel within 42 days. (*Id.*)

During his time in segregation, Plaintiff asked Defendant Lewis and Defendant Maus for his legal paperwork concerning his resentencing. (*Id.*, PageID.12–13.) Plaintiff told both Defendants that he would be filing grievances if he did not receive the paperwork. (*Id.*) Defendant Lewis responded, "You have 48 hours, and if you do not receive it by the, it will be because you threatened to write a grievance on me," while Defendant Maus told Plaintiff to ask the Warden, stating, "You do not come to segregation threatening staff to get your legal work, now see if you receive it." (*Id.*, PageID.13.) Plaintiff claims that Defendants Lewis and Maus interfered with Plaintiff's appeal of his resentencing and made it "impossible" for Plaintiff to meet the 42-day deadline to request an attorney. (*Id.*, PageID.14.) Plaintiff wrote a kite to Defendant Schiebner regarding the actions of Defendants Lewis and Maus; however, Defendant Schiebner did not take any action. (*Id.*, PageID.15.)

3

Finally, Plaintiff alleges that, during a conversation, Defendant Lewis told Plaintiff that he would be treated as if he were in segregation for "punitive reasons." (*Id.*, PageID.12.)

Plaintiff brings claims for First Amendment "retaliation" and interference with Plaintiff's "access to the court[s]" and Eighth Amendment "cruel and unusual punishment" and "deliberate indifference." (*Id.*, PageID.16–18.) He seeks declaratory and monetary relief. (*Id.*, PageID.19.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Official Capacity Claims

Plaintiff brings claims against Defendant Schiebner in his official as well as his personal capacity. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff seeks monetary damages. However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Similarly, Plaintiff may not seek

monetary damages against Defendant Schiebner in his official capacity. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). Therefore, the Court will dismiss Plaintiff's official capacity claims for money damages.

Plaintiff also seeks injunctive and declaratory relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Importantly, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at MCF, which is where he avers that Defendant Schiebner is employed. Because

Plaintiff is no longer at MCF, he cannot maintain his claims for injunctive or declaratory relief against Defendant Schiebner in his official capacity.

For all the reasons set forth above, Plaintiff has failed to state a claim against Defendant Schiebner in his official capacity. Therefore, Plaintiff's official capacity claims will be dismissed.

**B.        First Amendment Retaliation Claims**

Plaintiff brings claims of retaliation against Defendants Hamilton, Mitteer, Schiebner, Lewis, Maus, and Doe. (Compl., ECF No. 1, PageID.16–19.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, taking Plaintiff's allegations as true, as is required at this stage, the Court will allow Plaintiff to proceed with his First Amendment retaliation claims against Defendants Hamilton, Mitteer, Schiebner, Lewis, and Maus.

However, Plaintiff does not allege sufficient facts to state a claim of First Amendment retaliation against Defendant Doe. Plaintiff alleges only that Defendant Doe told Plaintiff that he needed to take a COVID-19 test and, following Plaintiff's complaint, maintained her position, stating, "If you do not take the test, you will not be anywhere." (Compl., ECF No. 1, PageID.18.)

7

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "because prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted). Therefore, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x. 579, 579–80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, there is nothing to suggest that Defendant Doe's position—requiring Plaintiff to take a COVID-19 test before having the opportunity to move from segregation—was motivated by Plaintiff's complaint as opposed to whatever motivated her original demand that Plaintiff take the test, made prior to Plaintiff's First Amendment protected conduct. Accordingly, the Court will dismiss Plaintiff's claim of First Amendment retaliation against Defendant Doe.

### C.    First Amendment Access to the Courts Claims

Plaintiff alleges that Defendants Lewis and Maus interfered with Plaintiff's access to the courts by not providing Plaintiff with his legal paperwork. (Compl., ECF No. 1, PageID.18.) Plaintiff also alleges that he wrote a kite to Defendant Schiebner regarding the actions of

Defendants Lewis and Maus; however, Defendant Schiebner did not take any action. (*Id.*, PageID.15.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop*, 977 F.2d at 1009.

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants' actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391 (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe

9

the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff's complaint does not include any well-pleaded factual allegations that would allow the Court to infer that Defendants hindered a non-frivolous legal claim in a direct appeal, habeas corpus application, or civil rights claim. In the section of his complaint title "non frivolous claims," Plaintiff claims that his consecutive sentence of 30 years for each of his two counts was invalid in light of "the recently overturned O'Hair law." (Compl, ECF No. 1, PageID.14.) However, Plaintiff does not provide the Court with any information concerning the offenses for which Plaintiff has been convicted or any facts or argument that would suggest that the sentences were, in fact, invalid. Therefore, any claims for interference with Plaintiff's access to the courts are properly dismissed.

To the extent that Plaintiff is attempting to raise a First Amendment access to the Court's claim based upon his use of the grievance process, he cannot. Defendants' actions (or inactions) in response to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821–24. The exhaustion requirement only mandates

10

exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Considering the foregoing, the Court finds that Plaintiff has failed to state a cognizable First Amendment claim for interference with Plaintiff's access to the courts.

### D.        Fourth Amendment Unreasonable Search Claims

Plaintiff alleges that Defendant Schiebner violated Plaintiff's "reasonable expectations of privacy" by allowing Plaintiff to 24-hour video observation while in segregation. (Compl., ECF No. 1, PageID.7–8.) The Court will liberally construe Plaintiff's allegation as raising a claim for violation of Plaintiff's Fourth Amendment rights.

The Fourth Amendment protects against unreasonable searches and seizures of one's person. U.S. Const. amend. IV. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523-24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate *any* subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526 (emphasis added). According to the Court, the "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527-528.

11

The Sixth Circuit has clarified that *Hudson* did not entirely extinguish a prisoner's Fourth Amendment right to bodily privacy. *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992). However, it has found a constitutional right to privacy only in the "right to be free from forced exposure of one's person to strangers of the opposite sex when not reasonably necessary for some legitimate, overriding reason." *Kent v. Johnson*, 821 F.2d 1220, 1226 (6th Cir. 1987). Here, there is nothing to suggest that members of the opposite sex were observing Plaintiff while Plaintiff was in segregation and unclothed. Accordingly, the Court finds that Plaintiff has failed to state a claim for violation of his Fourth Amendment rights.

### E.       Eighth Amendment Medical Care Claims

Plaintiff alleges that Defendants Hamilton, Mitteer, and Maus were deliberately indifferent to Plaintiff's needs for his CPAP machine, second pillow, and prostate and pain medications. Plaintiff also claims that Defendant Jane Doe required Plaintiff to take a COVID-19 test from her after she had previously tested other patients without gloves, and that, upon hearing of this, Defendant Kludy refused to obtain a new test for Plaintiff.

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

12

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, Plaintiff fails to provide the Court with any facts that would suggest an objectively serious medical condition. Even assuming that Plaintiff's CPAP machine, second pillow, and prostate and pain medications were previously issued by the MDOC, "[n]ot 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, No. 03–2633, 2004 WL 2203585 (6th Cir. Sept. 15, 2004) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1372 (7th Cir.1997)). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that the prisoner required immediate medical attention that even a lay person would easily recognize the severity of the situation. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Plaintiff does not identify his medical conditions, describe his need for the listed items, or even allege that he suffered any ill effects after not having these items from August 8, 2022, through August 19, 2022. Likewise, though Plaintiff alleges that he would have preferred that Defendant Doe wear gloves while performing the COVID-19 test, Plaintiff does not allege that he contracted COVID-19 or suffered any harm whatsoever as a result of Defendant Doe or Defendant Kludy's actions.

Accordingly, because Plaintiff failed to meet the threshold requirement of identifying an objectively serious medical need, the Court will dismiss Plaintiff's Eighth Amendment medical care claims.

**F.      Eighth Amendment Conditions of Confinement Claims**

Plaintiff alleges that Defendant Lewis told him that he would be treated as if he were in segregation for "punitive reasons." Plaintiff also alleges that he was subjected to 24-hour surveillance while in segregation. The Court will construe these allegations as raising Eighth Amendment conditions of confinement claims.

14

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment bars punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 102–03 (internal quotation marks omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Not "every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id*. Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Rhodes*, 452 U.S. at 347. Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

To state an Eighth Amendment claim for unconstitutional conditions of confinement, a prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). Like a medical care claim, the deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the

objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff claims that he was treated as if he were in punitive segregation. Courts have held that placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). And, the Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

Nonetheless, being exposed to the restrictive conditions of administrative segregation may go beyond "routine discomfort" if the exposure is for a long duration. *See, e.g.*, *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) (noting that "[c]onditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount" and "[i]n general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation while substantial deprivations of shelter, food, drinking water and sanitation may meet the standard despite a shorter duration" (internal quotation marks and citation omitted)); *see also Hutto v. Finney*, 437 U.S. 678, 686–86 (1978) (noting that "punitive isolation is not necessarily unconstitutional, but it may be, depending on the duration of the confinement and the conditions

16

thereof . . . the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards" (internal quotation marks and citation omitted)). Without something more, Plaintiff's eleven-day period of routine discomfort in segregation does not pass the threshold. *See, e.g.*, *Ross v. Reed*, 719 F.2d 689, 697 (4th Cir. 1983) ("As a matter of law, [the prisoner]'s three months in segregation . . . does not offend contemporary notions of decency and does not constitute a violation of the [E]ighth [A]mendment.").

With respect to Plaintiff's claim that he was subjected to 24-hour surveillance, there is nothing to suggest that this surveillance created *any* risk to Plaintiff's health or safety, let alone a sufficiently serious risk to Plaintiff's health or safety needed to give rise to an Eighth Amendment claim.

Therefore, for each of the foregoing reasons, the Court will dismiss Plaintiff's Eighth Amendment conditions of confinement claims.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kludy and Doe will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants Schiebner, Mitteer, Hamilton, Maus, and Lewis: official capacity claims, First Amendment access to the courts claims, Fourth Amendment claims, and Eighth Amendment claims. Plaintiff's claims of First Amendment retaliation against Defendants Schiebner, Mitteer, Hamilton, Maus, and Lewis remain in the case.

An order consistent with this opinion will be entered.

Dated:    May 5, 2026                              /s/ Robert J. Jonker
                                                   Robert J. Jonker
                                                   United States District Judge

17